IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RODNEY A. ANDERSON, #573698 | § | |
| VS. | § | CIVIL ACTION NO. 6:10cv35 |
| CHUCK BISCOE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Rodney A. Anderson, a prisoner confined at the Beto Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on February 10, 2010. On June 3, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Administrator Ginger Lively, Warden Eddie Baker and Nurse Maggie Dotson testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The Plaintiff's problems began with an incident that occurred on February 4, 2008. He was sitting in a day room at the Beto Unit when a ceiling fan fell on his head. He testified that it was his belief that the fan fell because the screws had become rusty. The fan fell without warning. He sued Maintenance Supervisor Kevin Sanders for failing to maintain the fan better.

The Plaintiff testified that he experienced headaches as a result of the fan falling on his head. Medical personnel gave him Ibuprofen, but he still experienced headaches. He submitted many sick call requests and grievances about his headaches and the fact that Ibuprofen was not eliminating the problem, but the situation was not resolved. His request for a MRI was denied.

Nurse Maggie Dotson testified under oath from the Plaintiff's original medical records. The Plaintiff also testified that the Court could review his medical records. The Plaintiff was brought to the infirmary at 4:03 p.m. on February 4, 2008. He reported that a ceiling fan had struck him in the back of the head. He denied he had a loss of consciousness. The Plaintiff complained about a severe headache. The nurse observed no blood in the Plaintiff's ears or nose. The Plaintiff was oriented and cooperative. Physician Assistant Egan issued instructions to watch him for six hours. At 4:25 p.m., the Plaintiff reported that he was feeling better, but he still had a headache. At 6:15 p.m., he stated he was feeling better, but he still had a headache. He was offered a meal and ate all of the meal without difficulty. There was no report of nausea. The nurse noted that there were no nervous system complaints. The Plaintiff was prescribed Ibuprofen. At 7 p.m., the Plaintiff denied he had any headache or blurred vision. His pupils bilaterally were reactive to light. At 8:59 p.m., there were no signs of any head injury, and the Plaintiff was released from the infirmary. He left free of pain and with a steady gait.

The Plaintiff submitted a sick call request on the following day. He was given a lay-in to see a medical provider. On February 13, 2008, the doctor noted intermittent neck pain. The Plaintiff's nerves were intact. His impression was probable mild concussion. The Plaintiff was prescribed Prednisone for six days and Ibuprofen 400 mg. four times a day for thirty days. The Plaintiff was seen again on March 7, 2008. He complained about pain in the back of his neck. The pain was described as intermittent. The Plaintiff was given Ibuprofen even though he complained that it was not helping.

Nurse Dotson noted that there was a regular pattern of the Plaintiff complaining about headaches and receiving Ibuprofen. She explained that a MRI would have been provided if there were signs of abnormalities during neurological examinations. A MRI was not ordered since no abnormalities were ever observed. She added that x-rays would not have shown anything. Nurse Dotson testified that the Plaintiff was examined by almost every medical provider at the Beto Unit, and each person had the same assessment.

The Plaintiff testified that he sued Stephen Hurt, the Clinical Supervisor at the Beto Unit, because he oversees the medical department. Nurse Dotson testified that Hurt was the administrator of the infirmary. He was basically the supervisor of the clerks and made sure that supplies were kept in stock. He was not a doctor and not directly responsible for the medical care provided to inmates.

The Plaintiff testified that he sued Warden Biscoe because he was responsible for the Beto Unit. He did not have any personal involvement in the Plaintiff's complaints.

Discussion and Analysis

In analyzing the Plaintiff's claims, the Court initially notes that federal courts are courts with limited jurisdiction having subject matter jurisdiction only over those matters specifically designated

by the Constitution or Congress. *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to federal violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights lawsuit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981).

The Plaintiff's first complaint concerned the ceiling fan falling on him. He expressed the opinion that the fan fell because the nails were rusty. The fan fell without warning. The Plaintiff sued Maintenance Supervisor Kevin Sanders because the fan was not maintained better.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). The "Constitution does not mandate comfortable prisons." *Id.* at 349. At the same time, in order to state a cognizable claim, a prisoner must allege facts showing that officials acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson*, 501 U.S. 294, 302-303 (1991); *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991). More recently, the Supreme Court thoroughly explained the concept of deliberate indifference in the prison setting and held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*

4

*v. Brennan*, 511 U.S. 825, 837 (1994). Finally, in order to state a claim, a prisoner must allege facts showing that he received more than a *de minimis* injury due to conditions. *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003).

The Fifth Circuit has considered a variety of cases which illustrate the type of conditions that are necessary to be considered cruel and unusual. In *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983), the Court held that allegations of a cold, rainy, roach-infested jail cell, with inoperative toilet facilities stated a cause of action. Similarly, allegations of cold cells with rats crawling all over prisoners state a cause of action. *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987).

The Fifth Circuit recently dealt with a case that had some similarities to the present case in *Atkins v. Sheriff's Jail Avovelles Parish*, 278 Fed. Appx. 438 (5th Cir. 2008). The Fifth Circuit rejected an inmate's claims of deliberate indifference based on injuries he sustained in a fall after officials failed to repair leaks in pipes that caused puddles of water. The Fifth Circuit held that the actions attributed to jail officials amounted to nothing more than "unreasonableness or negligence, neither of which establishes an Eighth Amendment violation." *Id.* at 439. The Fifth Circuit also rejected the inmate's allegations of deliberate indifference when he was given only Motrin and Tylenol after he was injured. *Id.*

In the present case, the Plaintiff's claim complaining about a fan falling on him because the nails were rusty do not give rise to an inference that the conditions were so bad that they constituted cruel and unusual punishment in violation of the Eighth Amendment. Moreover, the Plaintiff failed to show that anyone was deliberately indifferent. At most, the actions attributed to Maintenance Supervisor Kevin Sanders amounted to negligence in failing to maintain the ceiling fan. The facts

5

as alleged and developed against Sanders fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact.

The Plaintiff also complained about the medical care provided for his headaches after the ceiling fan fell on the back of his head. More specifically, he complained that he was not given a MRI and medication other than Ibuprofen.

Once again, the deliberate indifference standard discussed in *Farmer v. Brennan* applies to the Plaintiff's claim. In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Unsuccessful medical treatment does not give rise to a civil rights action. *Johnson v. Treen*, 759 F.2d at 1238. Moreover, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

In the present case, medical personnel were responsive to the Plaintiff's medical needs. He was prescribed Ibuprofen. He was not given a MRI because it was not medically indicated. The facts as alleged and developed do not support a claim of deliberate indifference.

The Court further notes that the Plaintiff did not sue any medical provider; instead, he sued the administrator of the Beto Unit Clinic. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Stephen Hurt, the clinic administrator, did not participate in any alleged acts of misconduct. Hurt was sued because of his supervisory role, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. Moreover, Hurt was not directly responsible for the medical care provided since he was the administrator of the facility, as opposed to a medical provider. *See Swain v. Price*, 155 Fed. Appx. 771, 772 (5th Cir. 2005).

Finally, the Plaintiff sued Warden Biscoe because he was responsible for the Beto Unit. Once again, however, Warden Biscoe cannot be liable just because he was the ultimate supervisor at the Beto Unit based on any theory of vicarious liability or *respondeat superior*. *Thompkins v. Belt*, 828 F.2d at 303. The Plaintiff did not show that Biscoe was personally involved in any constitutional violation or that there was a sufficient causal connection between his conduct and a constitutional violation. *Id.* at 304. *See also Fife v. Dabeties*, 264 Fed. Appx. 377 (5th Cir. 2008); *Rivera v. Salazar*, 166 Fed. Appx. 704, 706 (5th Cir. 2005).

In conclusion, the Plaintiff's various claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **15** day of **June, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE